IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CEDAR VIEW LTD., ) | |
| ) | Case No. 5:05-CV-00782 |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Ann Aldrich |
| ) | |
| TOM COLPETZER, d/b/a Xanadu Jersey Farm, et ) | |
| al., ) | |
| ) | MEMORANDUM AND ORDER |
| Defendants. ) | |
| ) | |

Before this Court are two motions: (1) the motion of defendants Dr. Jeffrey L. McKissick, V.D.M. ("McKissick") and Apple Grove Veterinary Clinic ("Apple Grove") to dismiss all claims against them under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction [Docket No. 29]; and (2) the motion by McKissick and Apple Grove for a protective order [Docket No. 47], pending this Court's ruling on McKissick and Apple Grove's motion to dismiss. McKissick and Apple Grove are asking for a stay of discovery pending the resolution of their 12(b)(2) motion.

For the following reasons, this Court grants in part and denies in part McKissick and Apple Grove's motion to dismiss, dismisses the breach of contract, negligence, breach of fiduciary duty, and rescission claims against McKissick and Apple Grove for lack of personal jurisdiction, and denies the motion for a stay as moot.

**I.  Background**

This case concerns the sale of a herd of cattle from defendant Charles Moose ("Moose") to plaintiff Cedar View Ltd. ("Cedar View"), brokered by defendant Tom Colpetzer ("Colpetzer"). (First Am. Compl., Ex. 1) McKissick, working out of Apple Grove in Pennsylvania, inspected the cattle prior to

their sale and delivery, knowing that they were being sold and would be delivered to Cedar View in Ohio. (First Am. Compl., Ex. 2) Aside from McKissick's role in inspecting the cattle, he appears to have had no other role in the sale.

After Cedar View took delivery, at least some of the cattle were discovered to have contracted salmonella, a communicable disease. Cedar View then filed suit against Moose, Colpetzer, McKissick and Apple Grove. McKissick and Apple Grove filed a motion to dismiss all claims against them for lack of personal jurisdiction on May 24, 2005 [Docket No. 29]. McKissick and Apple Grove also filed a motion asking this Court to exempt them from responding to discovery until the court rules on the motion to dismiss [Docket No. 47].

**II.  Discussion**

*1.  Personal Jurisdiction*

Although Cedar View does not explicitly cite 28 U.S.C. § 1332 in its complaint, it does allege diversity of the parties and an amount in controversy exceeding $75,000, establishing *prima facie* diversity jurisdiction. 28 U.S.C. § 1332(a). Therefore, this Court first looks to Ohio law to determine whether personal jurisdiction exists. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citing *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1298 (6th Cir.1989)). In the absence of an evidentiary hearing, this Court must view the pleadings and affidavits in a light most favorable to Cedar View, and not consider the controverting assertions of McKissick or Apple Grove. *Id.* (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir.1998)). Cedar View needs only a *prima facie* showing of personal jurisdiction. *Id.*

Under Ohio law:

When determining whether a . . . court has personal jurisdiction

> over a foreign corporation the court is obligated to engage in a
> two-step analysis. First, the court must determine whether the
> state's 'long-arm' statute . . . confer[s] personal jurisdiction, and, if
> so, whether granting jurisdiction under the statute . . . would
> deprive the defendant of the right to due process of law pursuant to
> the Fourteenth Amendment to the United States Constitution.

*U.S. Sprint Commc'n Co. v. Mr. K's Foods, Inc.*, 68 Ohio St. 3d 181, 183-84, 624 N.E.2d 1048, 1051 (1994). Ohio law allows courts to exercise personal jurisdiction for persons who "[t]ransact[] any business in [Ohio]" or "[c]aus[e] tortious injury in [Ohio] to any person by an act outside [Ohio] committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in [Ohio]." OHIO REV. CODE §§ 2307.382(A)(1), (6).

If Cedar View makes that showing, it must still demonstrate that this Court's exercise of personal jurisdiction would not deprive McKissick or Apple Grove of due process pursuant to the Due Process Clause of the Fourteenth Amendment. *U.S. Sprint*, 68 Ohio St. 3d at 184, 624 N.E.2d at 1051. To determine whether there would be a due process violation, the Sixth Circuit uses a three part test:

> First, the defendant must purposefully avail himself of the privilege
> of acting in the forum state or causing a consequence in the forum
> state. Second, the cause of action must arise from the defendant's
> activities there. Finally, the acts of the defendant or consequences
> caused by the defendant must have a substantial enough connection
> with the forum state to make the exercise of jurisdiction over the
> defendant reasonable.

*Calphalon Corp.*, 228 F.3d at 721 (quoting *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir.1968)).

      a.    Ohio's "Long-Arm" Statute

Cedar View alleges that McKissick and Apple Grove knew or should have known about the salmonella infection of the herd and were deficient in failing to discover the infection, or were hiding it fraudulently. Therefore, the only applicable portions of the Ohio long-arm statute are Sections

-3-

2307.382(A)(1) and (A)(6). Contrary to what Cedar View asserts in its response to the motion to dismiss [Docket No. 43], McKissick and Apple Grove clearly were not parties to the sale transaction. (First Am. Compl., Ex. 1) Therefore, Section 2307.382(A)(2) does not apply, as neither McKissick nor Apple Grove "contract[ed] to supply services or goods" in Ohio. OHIO REV. CODE § 2307.382(A)(2). Section 2307.382(A)(3) also does not apply, since McKissick's inspection of the herd took place in Pennsylvania, not in Ohio. OHIO REV. CODE §§ 2307.382(A)(3).

This Court is thus left with Sections 2307.382(A)(1) and (A)(6) -- personal jurisdiction for "transacting any business" in Ohio and for "causing tortious injury" in Ohio "by an act outside [Ohio] committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in [Ohio]." OHIO REV. CODE §§ 2307.382(A)(1), (6). Ohio courts have interpreted Section 2307.382(A)(1) broadly, holding that it includes negotiations and "dealings" in addition to actual contractual relations. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 480 (1990). However, McKissick and Apple Grove never engaged in any negotiations, communications, or dealings with Cedar View. To the contrary, as the purchase agreement shows, the sale of the herd only involved Cedar View, Colpetzer, and Moose. As a result, so far as this case is concerned, McKissick and Apple Grove did not "transact any business" in Ohio, and Section 2307.382(A)(1) provides no personal jurisdiction. As far as Section 2307.382(A)(6) is concerned, Cedar View does arguably make out a claim for intentional tort liability in accusing McKissick of fraudulently concealing the herd's salmonella infection.[1] However, this Court would only have jurisdiction under the Ohio statute over Cedar View's fraud and concealment claims, as Section 2307.382(A)(6) only grants

---

[1] The Court assumes, for purposes of this motion, that Cedar View's First Amended Complaint successfully pleads its claim of fraud. The Court, however, does not express any opinion on the merit of that claim or its compliance with Rule 9(b) of the Federal Rules of Civil Procedure.

-4-

jurisdiction over intentional torts. *See* OHIO REV. CODE § 2307.382(A)(6) (covering acts "committed *with the purpose* of injuring persons" only) (emphasis added). As a result, this Court must examine whether exercising jurisdiction would violate the Due Process Clause.

### b. Due Process

As noted above, the Sixth Circuit uses a three-part test to determine whether the exercise of jurisdiction violates due process. First, the Court must determine whether McKissick and Apple Grove "purposefully availed" themselves of the privilege of acting in, or causing a consequence, in Ohio. *Calphalon Corp.*, 228 F.3d at 721 (citing *Southern Machine Co.*, 401 F.2d at 381). Second, Cedar View's claim must "arise from" McKissick and Apple Grove's activities. *Id.* Third, McKissick and Apple Grove's acts, or the consequences of those acts, must have a "substantial enough connection" with Ohio to make the exercise of jurisdiction "reasonable." *Id.*

The "purposeful availment" prong is satisfied if McKissick and Apple Grove's contacts with Ohio resulted from actions taken by McKissick or Apple Grove that create a "substantial connection" to Ohio, so that McKissick and Apple Grove's conduct and connection show that they "should reasonably anticipate being haled into court there." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir.1996) (quoting *Burger King Corp. v. Rudewicz*, 471 U.S. 462, 474-75 (1985))). In other words, McKissick and Apple Grove may not be brought into this Court by the "unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (citation omitted). Without "some overt actions connecting the defendant with the forum state," there is no "purposeful availment." *Dean*, 134 F.3d at 1274.

In this case, Cedar View's allegations of fraud and concealment on the part of McKissick and Apple Grove are sufficient to meet the "purposeful availment" prong. If the Court assumes that

McKissick and Apple Grove knew about the infection, knew that the herd was being sold to Cedar View and sent to Ohio, and fraudulently concealed that information, then those actions would create a substantial connection showing that McKissick and Apple Grove should reasonably anticipate being haled into court in Ohio. Additionally, Cedar View's claims occurred because of the alleged failure to detect and disclose the salmonella infection. Thus, Cedar View's fraud and concealment claims "arise from" McKissick and Apple Grove's alleged acts. Finally, when the first two factors are met, there is a presumption that the exercise of personal jurisdiction would be reasonable. *Third Nat'l Bank v. WEDGE Group Inc.*, 882 F.2d 1087, 1092 (6th Cir.1989).

As a result, the exercise of personal jurisdiction over McKissick and Apple Grove for Cedar View's fraud and concealment claims appears not to violate due process.

   *c.* *Conclusion*

McKissick and Apple Grove's motion to dismiss Cedar View's claims for breach of contract, negligence, breach of fiduciary duty, and rescission against McKissick and Apple Grove is granted, and those claims are dismissed for lack of personal jurisdiction. McKissick and Apple Grove's motion to dismiss Cedar View's claims for fraud and concealment is denied.

   2. *"Protective Order"*

As this Court has now ruled on McKissick and Apple Grove's motion to dismiss for lack of jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure [Docket No. 29], McKissick and Apple Grove's motion for a protective order [Docket No. 47] is now moot and is therefore denied.

### III. Conclusion

For the foregoing reasons, McKissick and Apple Grove's motion to dismiss for lack of jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure [Docket No. 29] is granted in part

and denied in part. The Court possesses personal jurisdiction over McKissick and Apple Grove only as to Cedar View's fraud and concealment claims. Cedar View's breach of contract, negligence, breach of fiduciary duty, and rescission claims against McKissick and Apple Grove are dismissed for lack of personal jurisdiction.

McKissick and Apple Grove's motion for a stay of discovery [Docket No. 47] is denied as moot.

According to the terms of the Case Management Order entered by the Court [Docket No. 39], the parties have until Friday, November 4, 2005 to amend their pleadings without leave of this Court. The close of discovery remains Thursday, March 31, 2006, and all dispositive motions are still due by Monday, May 1, 2006 as previously ordered.

IT IS SO ORDERED.

    s/Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: September 30, 2005**