UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CEDAR VIEW, LTD., | ) | |
| | ) | Case Nos.  5:05-CV-00782 |
| Plaintiff, | ) | 5:06-CV-01367 |
| | ) | |
| v. | ) | JUDGE ANN ALDRICH |
| | ) | |
| TOM COLPETZER, et al., | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM AND ORDER |
| | ) | |
| | ) | |

Before the court are a number of cross-motions for summary judgment on the various claims among the parties in both of these cases. In Case No. 5:05-CV-00782 (*Cedar View I*), the following motions are pending: (1) third-party defendants Charles Cutter and Elizabeth Cutter's (the "Cutters") motion for summary judgment [Docket No. 253]; (2) defendant Tom Colpetzer's ("Colpetzer") motions for summary judgment [Docket Nos. 254, 278] on plaintiff Cedar View, Ltd.'s ("Cedar View") remaining claims; and (3) defendant Charles Moose's ("Moose") motions for summary judgment [Docket Nos. 256, 257] on those same claims. In Case No. 5:06-CV-01367 (*Cedar View II*), the following motions are pending: (1) plaintiff Cutters' motions for summary judgment [Docket Nos. 31, 34]; and (2) defendant Moose's motion for summary judgment [Docket No. 36]. For the following reasons, the court grants all of these motions for summary judgment as described below, enters judgment as a matter of law on all remaining claims in both cases, and dismisses both actions.

**I.**

**A.    Factual Background**

This case involves the sale of a herd of cattle (the "Moose herd") owned by Moose to Cedar View in May 2004. The sale was brokered by Colpetzer. The Cutters own Cedar View. After

reviewing the evidence in the record, the court finds that the following facts are undisputed. Prior to the delivery of the Moose herd to Cedar View, none of the parties in this case had dealt with salmonella infections in their herds, nor had any person who had inspected the Moose herd prior to its delivery to Cedar View observed any symptoms of salmonella in any animal in the Moose herd. Upon arrival at Cedar View, one cow ("Cow 169") was noticeably ill and suffering from symptoms associated with salmonella. That cow was segregated, treated and eventually disposed of, but other cows in both the Moose herd and the herd already at Cedar View (the "Billman herd") became infected.

A number of cattle died from the salmonella infection. The first sick cow was reported by Cedar View, but at no point was the cow rejected or its return attempted. Another cow was rejected and returned, for reasons other than illness. None of the animals in the Billman herd showed any symptoms associated with salmonella prior to the arrival of the Moose herd. The Moose and Billman herds were commingled immediately upon the Moose herd's arrival, because Cedar View did not possess facilities to segregate the two herds. Before it was shipped to Cedar View, Cow 169 was ill; symptoms associated with other diseases were noticed, but those symptoms were not indicative of salmonella.

The contract of sale, as evidenced in the documents provided to this court, between Cedar View, Colpetzer and Moose does not explicitly require immunization or vaccination of the Moose herd prior to its arrival. No express warranty concerning the condition of the herd was written into that contract.

    **B.**    **Procedural Background**

There are currently a number of claims, counterclaims and third-party claims remaining in

both *Cedar View I* and *Cedar View II*. In *Cedar View I*, four claims by Cedar View remain against both Colpetzer and Moose: (1) breach of contract; (2) negligence; (3) fraud; and (4) concealment. A third-party claim for negligence by both Colpetzer and Moose against the Cutters also remains, as do four "counterclaims" by Moose against the Cutters for negligence, spoliation, contribution and punitive damages. These four claims are not actually counterclaims, as they are asserted against the Cutters, not Cedar View.

In *Cedar View II*, three claims by the Cutters remain against both Colpetzer and Moose: (1) negligence, concealment and mispresentation; (2) loss of consortium; and (3) punitive damages. Cedar View is listed as a plaintiff in *Cedar View II*, but it is clear from the language of the complaint that the only plaintiffs are the Cutters. Colpetzer and Moose have stated counterclaims against the Cutters in *Cedar View II* that are identical to the third-party claims stated against the Cutters in *Cedar View I*, and they will be resolved in similar fashion.

## II.     Discussion

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

> An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this Court must view the evidence in a light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### A. Cedar View's Claims

On Cedar View's breach of contract claim, the court has found that the undisputed facts established no explicit warranty regarding the Moose herd's health nor any requirement of immunization or vaccination before that herd was to be delivered to Cedar View. Therefore, the only possible breach of contract on these facts is the breach of the implied warranty set forth in Ohio Rev. Code 1302.29(C)(4)(b). The statute creates an implied warranty that "the seller has no knowledge or reason to know that the animal is not free from disease at the time of sale and that he has complied with all state and federal health rules applicable to the animal." *Id.* Based upon the

-4-

undisputed facts as found by the court, because none of the parties had any reason to expect the Moose herd to have been infected by salmonella, and none of the animals in the Moose herd exhibited salmonella-related symptoms prior to their delivery to Cedar View, the court finds that there was no breach of the implied warranty as a matter of law.  As none of the express terms of the contract were breached, the court therefore grants Colpetzer and Moose judgment as a matter of law on Cedar View's breach of contract claim.

In order to state a claim for negligence, Cedar View must produce evidence establishing a genuine issue of material fact that Colpetzer and Moose owed Cedar View a duty, breached that duty, and that the breach proximately caused the alleged injury.  *Jeffers v. Olexo*, 539 N.E.2d 614, 616 (Ohio 1989).  On these facts, because neither Colpetzer nor Moose knew or had reason to know of any salmonella infection, and because they took all the steps required by the contract and what, based on the evidence before the court, is the normal course of dealing, the court finds no breach of duty occurred, assuming that the duty was one of simple reasonable care.  In other words, the court finds that Colpetzer and Moose did all that was asked or required of them under the law.  The court therefore grants Colpetzer and Moose judgment as a matter of law on Cedar View's negligence claim.

As the court noted in its March 29, 2007 memorandum and order [Docket No. 320] dismissing Jeffrey McKissick and Apple Grove Veterinary Clinic from *Cedar View I*, Cedar View's fraud claim fails if it cannot produce evidence that a defendant knew of, or recklessly disregarded the knowledge of, the salmonella infection and then represented to Cedar View that the Moose herd was not infected.  *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 459 n.7 (6th Cir. 2004) (citing *Davis v. Sun Ref. & Mktg. Co.*, 109 Ohio App.3d 42, 55, 671 N.E.2d 1049, 1058 (1996)).  As the

undisputed facts show, neither Colpetzer nor Moose knew or had any reason to know of any salmonella infection afflicting the Moose herd.  Therefore, Cedar View is unable, as a matter of law, to establish that necessary element of its fraud claim.  The court grants Colpetzer and Moose judgment as a matter of law on Cedar View's fraud claim.

For similar reasons, the court grants Colpetzer and Moose judgment as a matter of law on Cedar View's concealment claim.  Even assuming a duty to disclose, as the court did in a prior order [Docket No. 84], the undisputed facts demonstrate that Colpetzer and Moose had nothing to disclose and concealed no material facts from Cedar View prior to the delivery of the Moose herd.  The court therefore finds that Colpetzer and Moose did not, as a matter of law, fail to disclose material information to Cedar View, and grants Colpetzer and Moose judgment as a matter of law on Cedar View's concealment claim.

### B.     Third-Party Claims in *Cedar View I*

The court now turns to the remaining claims in *Cedar View I*, the third-party and "counterclaims" asserted by Colpetzer and Moose.  The court first grants the Cutters judgment as a matter of law on Moose's "counterclaims" 2, 3 and 4 for the reasons stated in the court's March 20, 2007 memorandum and order [Docket No. 311] where the court disposed of identical third-party claims made by Moose against the Cutters.  That leaves only the negligence claims by Colpetzer and Moose against the Cutters.  In these claims, Colpetzer and Moose allege that if the Moose and Billman herds became infected with salmonella, that was due to the Cutters' own negligence, and that the Cutters' negligence has thus caused damages to Colpetzer and Moose in the form of the costs of this litigation.  These claims are curious, at best.  First, the negligence alleged by Colpetzer and Moose is a *defense*, not a separate *claim* to be made.  Second, the Cutters' alleged negligence is

not the proximate cause of the alleged damages; Cedar View's decision to file the instant lawsuit is. In other words, there is no proximate cause for the stated damages, because it would be nonsensical to find that Cedar View's decision to sue was a foreseeable consequence of the Cutters' alleged negligence. *Jeffers*, 539 N.E.2d at 617. And even assuming that Cedar View's decision to sue was foreseeable, *Cedar View's decision* constitutes an independent and intervening cause precluding liability as a result of the Cutters' alleged negligence. *See, e.g., Thrash v. U-Drive-It Co.*, 110 N.E.2d 419, 422 (Ohio 1953). The court therefore grants judgment as a matter of law to the Cutters on Colpetzer and Moose's third-party claims and "counterclaims" for negligence.

### C. Claims in *Cedar View II*

In *Cedar View II*, the Cutters assert claims for negligence, concealment and misrepresentation, loss of consortium and punitive damages against Colpetzer and Moose. For the same reasons the court granted judgment as a matter of law to Colpetzer and Moose on the negligence, fraud and concealment claims in *Cedar View I*, the court must also grant judgment as a matter of law to Colpetzer and Moose on the Cutters' claims for negligence, concealment, misrepresentation and punitive damages in *Cedar View II*. As the court held, Colpetzer and Moose were not negligent, did not conceal information, and made no misrepresentations. Furthermore, without any willful or malicious conduct, punitive damages are not available. Finally, because the court has dismissed the primary claims asserted by Charles Cutter against Colpetzer and Moose, the court must also grant judgment as a matter of law on Elizabeth Cutter's loss of consortium claim. That claim is merely derivative of the primary claims and survives only as long as the primary claims do. *Messmore v. Monarch Mach. Tool Co.*, 463 N.E.2d 108, 110 (Ohio Ct. App. 1983).

Finally, Colpetzer and Moose have both stated counterclaims against the Cutters that are

identical to the claims the court dismissed either on March 20, 2007 or earlier in this order. The court therefore grants the Cutters judgment as a matter of law on all of the counterclaims asserted by Colpetzer and Moose in *Cedar View II* for the same reasons those claims were dismissed in *Cedar View I*.

### III. Conclusion

For the foregoing reasons, the court has granted all of the pending summary judgment motions: *Cedar View I* [Docket Nos. 253, 254, 256, 257, 278]; *Cedar View II* [Docket Nos. 31, 34, 36] and granted judgment as a matter of law on all pending claims. As all pending claims have been resolved, the court hereby dismisses both actions in their entirety.

This order is final and appealable.

IT IS SO ORDERED.

                                                /s/Ann Aldrich
                                                ANN ALDRICH
                                                UNITED STATES DISTRICT JUDGE

**Dated: October 23, 2007**