UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CEDAR VIEW, LTD., | ) | |
| | ) | Case Nos. 5:05-CV-00782 |
| Plaintiff, | ) | 5:06-CV-01367 |
| | ) | |
| v. | ) | JUDGE ANN ALDRICH |
| | ) | |
| TOM COLPETZER, et al., | ) | |
| | ) | MEMORANDUM AND ORDER |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before this court is a motion [Case No. 5:05-CV-00782, Doc. No. 356] filed by plaintiff Cedar View Ltd. ("Cedar View") seeking this court's reconsideration of its October 23, 2007 order (the "Order"). In the Order, this court granted motions for summary judgment [Doc. Nos. 253, 254, 256, 357, and 278] filed by defendants Tom Colpetzer ("Colpetzer") and Charles Moose ("Charles") and third party defendants Charles Cutter and Elizabeth Cutter. On September 30, 2008, this court granted Cedar View's motion for reconsideration pursuant to Rule 59(e) and stated that an opinion would be forthcoming. In granting Cedar View's motion for reconsideration, this court will only reconsider whether the defendants breached the implied warranty set forth in Ohio Revised Code § 1302.29(C)(4)(b). For the reasons set forth below, the court affirms the Order.

**I.  Factual Background**

This case involves the sale of a herd of cattle (the "Moose herd") owned by Moose to Cedar View in May 2004. The sale was brokered by Colpetzer. Prior to the delivery of the Moose herd from Moose's farm in western Pennsylvania to Cedar View's farm in Ohio, none of the parties in this case

had dealt with salmonella infections in their herds, nor had any person who had inspected the Moose herd prior to its delivery to Cedar View observed any symptoms of salmonella in any animal in the Moose herd. At the time of the shipment, salmonella outbreaks involving the relevant strain had not occurred near Moose's property but had occurred near Cedar View's property.

Before it was shipped to Cedar View, one cow ("Cow 169") was ill; symptoms associated with other diseases were noticed, but those symptoms were not clearly indicative of salmonella. Various parties attributed Cow 169's illness to birthing a calf, swallowing a metal object, or shipping fever. Cow 169 was segregated during shipping. Upon arrival at Cedar View, Cow 169 was noticeably ill and suffering from symptoms associated with salmonella, most notably severe diarrhea. None of the parties, however, suspected that salmonella was the culprit at that time. Cow 169 was segregated, treated, and eventually disposed of. Although one other cow was rejected by Cedar View and returned for being of abnormally large physical size, at no point was Cow 169 rejected or its return attempted.

None of the animals already at Cedar View (the "Billman herd") showed any symptoms associated with salmonella prior to the arrival of the Moose herd. The Moose and Billman herds were commingled immediately upon the Moose herd's arrival, because Cedar View did not possess facilities to segregate the two herds. Within a week, the Billman herd became infected, and a number of cattle from both the Moose and Billman herds died from the salmonella infection.

**II.  Standard**

   *A.  Motion for Reconsideration*

Although a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it is often treated as a motion pursuant to Rule 59(e). *McDowell v. Dynamics Corp. of America*, 931 F.2d 380, 382 (6th Cir. 1991). The purpose of a motion to alter or amend judgment under Rule 59(e)

is to have the court reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst and Whinney*, 489 U.S. 169, 174 (1988). "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) (quoting *In re August 1993 Regular Grand Jury*, 854 F. Supp. 1403, 1408 (S.D. Ind. 1994)). In other words, Rule 59(e) is not designed to give an unhappy litigant an opportunity to relitigate matters already decided. *See Dana Corp. v. United States*, 764 F. Supp. 482, 488-89 (N.D. Ohio 1991).

Generally, there are three situations that justify a district court in altering or amending its judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice." *Sanders v. Daimler Chrysler Corp.*, No. 3:05 CV 7056, 2008 U.S. Dist. LEXIS 5253, at *2 (N.D. Ohio Jan. 24, 2008). Cedar View appears to premise its motion to reconsider on the need to correct a clear error of law by demonstrating that a genuine issue of material fact did exist at the time of the Order.

### B. Summary Judgment

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir.2004). If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

-3-

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

FED. R. CIV. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this court must view the evidence in a light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir.2004). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson*, 477 U.S. at 248. An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### *C.     Ohio Revised Code § 1302.29*

All parties agree that Ohio Revised Code § 1302.29(C)(4) applies to this dispute. The statute provides:

> (4) with respect to the sale of livestock between merchants, except sales of livestock for immediate slaughter, both of the following apply:
>
> (a) there is no implied warranty that the animal is free from disease.[;]

> (b) there is an implied warranty that the seller has no knowledge or reason to know that the animal is not free from disease at the time of sale and that he has complied with all state and federal health issues applicable to the animal.

OHIO REV. CODE § 1302.29(C)(4)(a) and (b).

### III. Discussion

Here, Cedar View claims that this court committed a clear error of law when it issued the Order because an issue of material fact did exist. Specifically, Cedar View claims that the Saunders affidavit [Doc. No. 293] establishes that Colpetzer and Moose had reason to know that the Moose herd was infected with salmonella. Based on this evidence, Cedar View believes that material questions of fact exist with regard to whether Colpetzer and Moose breached the implied warranty set forth in § 1302.29(C)(4)(b).

The Saunders affidavit provided by Cedar View sets out four propositions relevant to Cedar View's claim that Colpetzer and Moose breached an implied warranty. First, Saunders claims that the herd experienced a diarrhea outbreak "sometime prior to the sale of his cattle" (the "unidentified outbreak"). Second, Saunders claims that a veterinarian was not called to diagnose or treat the unidentified outbreak. Third, Saunders claims that Moose believed that the unidentified outbreak was consistent with Type II Bovine Virus Diarrhea ("BVD"), which exhibits symptoms similar to salmonella. Fourth, Saunders suggests that Moose's belief that the unidentified outbreak was caused by Type II BVD, rather than salmonella, was unreasonable because the outbreak resulted in no "significant death losses," as would be typical of a Type II BVD outbreak. These statements lead Cedar View to conclude that Colpetzer and Moose should have known that the Moose herd was infected with salmonella at the time of the sale.

Even when viewed in a light most favorable to Cedar View, none of these propositions, individually or in combination, creates a genuine issue of material fact. This is because the affidavit does not show Colpetzer or Moose should have known that the Moose herd was infected with salmonella at the time of the sale. First, the unidentified outbreak occurred in the 1990s, several years before the sale to Cedar View. Thus, the actual date of the unidentified outbreak was much earlier than Saunders' affidavit suggests, weakening Cedar View's argument that Colpetzer and Moose should have known that the Moose herd was infected at the time of the sale. Second, the fact that a veterinarian was never called to diagnose or treat the herd is entirely consistent with Moose's assertion that he did not suspect that the unidentified outbreak was anything so serious as salmonella. Third, Saunders indicates that the symptoms of Type II BVD and salmonella are similar, giving credence to Moose's claim that he did, in fact, believe that the unidentified outbreak was caused by Type II BVD. Finally, Saunders asserts that Type II BVD causes "significant death losses" which did not occur during the unidentified outbreak. The Wolfgang expert report provided by defendants Colpetzer and Moose, however, states that Type II BVD might not have caused significant death loss because the Moose herd was already vaccinated against Type I BVD [Doc. No. 290].

In addition, the Wolfgang expert report indicates that the relevant strain of salmonella was not reported in western Pennsylvania at the time of the unidentified outbreak or the sale to Cedar View, that the Moose children did not succumb to illness during the unidentified outbreak as might be expected during a salmonella outbreak, and that the Moose herd did not exhibit resistence to infection during the salmonella outbreak as might be expected had they been previously exposed to salmonella during the unidentified outbreak. From these observations, Wolfgang concluded that the unidentified outbreak could have been caused by a "large number of etiologies" other than salmonella. Furthermore, there

-6-

were no obvious signs of contagious disease reported at the time of the inspection other than the presence of warts on one cow. Because Cedar View does not allege that the warts found on this cow spread to other cows, caused the salmonella outbreak, or caused the cow to become unproductive, this fact is not material to the outcome of the case. Given that the facts and observations stated in the Wolfgang report are not inconsistent with the statements made in the Sanders affidavit, this court cannot find that the Sanders affidavit creates a genuine issue of material fact.

**IV.  Conclusion**

The evidence before this court leads this court to conclude that no rational juror could find that Colpetzer and Moose knew or had reason to know that the prior outbreak was caused by salmonella. As a result, Colpetzer and Moose are entitled to judgment as a matter of law. The court, therefore, affirms its decision to grant Colpetzer's and Moose's motions for summary judgment on the issue of their alleged breach of an implied warranty.

This order is final and appealable.

IT IS SO ORDERED.

   s/ *Ann Aldrich*
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: October 9, 2008**